NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MUSSA ALI,**
*Plaintiff-Appellant*

**v.**

**CARNEGIE INSTITUTION OF WASHINGTON, UNIVERSITY OF MASSACHUSETTS,**
*Defendants-Appellees*

---

2016-2320

---

Appeal from the United States District Court for the District of Columbia in No. 1:13-cv-02030-RC, Judge Rudolph Contreras.

---

Decided: April 12, 2017

---

MUSSA ALI, Seattle, WA, pro se.

KURT CALIA, Covington & Burling LLP, Redwood Shores, CA, for defendants-appellees. Also represented by NATHAN EVANS SHAFROTH, ALEXA HANSEN, San Francisco, CA.

---

Before DYK, BRYSON, and CHEN, *Circuit Judges.*

Opinion for the court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* Dyk.

PER CURIAM.

This longstanding patent dispute began when Mussa Ali, proceeding pro se, filed a civil suit in the U.S. District Court for the District of Oregon (Oregon court) against the Carnegie Institution of Washington (Carnegie) and the University of Massachusetts (UMass) (collectively, defendants), alleging that they erroneously omitted Mr. Ali as a co-inventor on a handful of patents that the defendants co-owned. Mr. Ali sought to be added as a co-inventor to the patents-in-suit, as well as monetary damages from UMass for this alleged omission. Afterwards, the Oregon court dismissed UMass on the ground that it is entitled to sovereign immunity under the Eleventh Amendment of the U.S. Constitution and sua sponte transferred the case to the U.S. District Court for the District of Columbia (DC court) because it lacked personal jurisdiction over Carnegie. The DC court then dismissed the case because UMass was a necessary party that could not be joined and ultimately entered judgment against Mr. Ali. Although we have liberally construed Mr. Ali's appeal of various decisions rendered by the Oregon court and the DC court, we conclude that neither court erred in any respect, and we, therefore, *affirm*.

## BACKGROUND

U.S. Patent Nos. 6,506,559, 7,538,095, 7,560,438, 7,622,633, and 8,283,329 (patents-in-suit) are generally directed to methods of gene-specific inhibition through the use of double-stranded ribonucleic acid and are jointly owned by the defendants. Two of the named co-inventors of the claimed inventions, Dr. Andrew Fire of Carnegie and Dr. Craig C. Mello of UMass, received the Nobel Prize in Medicine in 2006 for these inventions. Mr. Ali alleges that he made a critical contribution to the claimed inven-

tions of the patents-in-suit while he was employed in Dr. Mello's laboratory at UMass and that Dr. Mello then shared Mr. Ali's contribution with Dr. Fire. Mr. Ali attempted on many occasions to have the defendants add him as a co-inventor on the patents-in-suit, but they refused to do so. Their refusal led to this litigation.

Mr. Ali filed a complaint against Carnegie in the Oregon court, which he would later amend to join UMass as a co-defendant, seeking to become a named co-inventor to the patents-in-suit under 35 U.S.C. § 256 (2012) (inventorship claim), as well as to recover damages from UMass for any money derived from the patents-in-suit that he was entitled to as a co-inventor (damages claims). UMass then moved for dismissal of the case against it under Fed. R. Civ. P. (12)(b)(1), arguing that the Oregon court lacked subject matter jurisdiction because UMass has sovereign immunity as an "arm" of Massachusetts under the Eleventh Amendment. In light of this argument, the defendants jointly filed a motion for complete dismissal of the case pursuant to Fed. R. Civ. P. 12(b)(7), asserting that UMass was a necessary party that could not be joined in the case. Alternatively, they jointly moved for complete dismissal under Fed. R. Civ. P. 12(b)(2) as well, contending that the Oregon court lacked personal jurisdiction over them.[1]

The Oregon court concluded that the Eleventh Amendment provided UMass sovereign immunity from suit as it was essentially one and the same as Massachusetts and that UMass had not engaged in any conduct that suggested it waived this immunity. Thus, the Oregon court granted UMass's Rule 12(b)(1) motion, dismissing it from the case. The Oregon court then considered

---

[1] The defendants also moved for partial dismissal under Federal Rule of Civil Procedure 12(b)(6), but that is irrelevant to this appeal.

whether it had personal jurisdiction over Carnegie, but deferred making a decision so as to permit Mr. Ali to conduct limited jurisdictional discovery into any relationship between Carnegie and Oregon.

Mr. Ali sought reconsideration of the Oregon court's dismissal decision. Mr. Ali contended that UMass waived its sovereign immunity when it accepted funds from the federal government under the University and Small Business Patent Procedures Act, 35 U.S.C. §§ 200–12 (2012), commonly known as the Bayh-Dole Act, in support of certain research that led to the issuance of the patents-in-suit because UMass's receipt of federal funds was conditioned on the waiver of its sovereign immunity.[2] The Oregon court rejected Mr. Ali's contention, finding no provision in the Bayh-Dole Act that supported this theory of conditional receipt of funds.

For its part, Carnegie sought reconsideration of the Oregon court's discovery order, and the Oregon court reversed course. It explained that even if it accepted Mr. Ali's allegations concerning Carnegie's research, educational, and licensing efforts directed at Oregon as true, they would not constitute the systematic and continuous contacts necessary to hold that the court had general

---

[2] "In 1980, Congress passed the Bayh-Dole Act to 'promote the utilization of inventions arising from federally supported research,' 'promote collaboration between commercial concerns and nonprofit organizations,' and 'ensure that the [g]overnment obtains sufficient rights in federally supported inventions.'" *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 782 (2011) (quoting 35 U.S.C. § 200 (2006)); *see also Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 929 (Fed. Cir. 2004) ("The Bayh-Dole Act was intended to enable universities to profit from their federally-funded research.").

personal jurisdiction over Carnegie. Moreover, because Mr. Ali's lawsuit was unrelated to any such alleged efforts, the Oregon court held that it could not exert specific personal jurisdiction over Carnegie in this particular dispute. The Oregon court then sua sponte transferred the case to Washington, D.C. And in doing so, it declined to address the then-pending Rule 12(b)(7) motion.

Upon transfer to the DC court, the court resolved the Rule 12(b)(7) motion and considered three variables in evaluating whether to dismiss the action due to the absence of UMass as a party:

> (1) [W]hether the absent party is "required" for the litigation according to the factors enumerated in [Fed. R. Civ. P. 19(a)]; (2) whether the required party can be joined; and (3) if joinder is not feasible, whether the action can nevertheless proceeding in "equity and good conscience" under [the factors identified in Fed. R. Civ. P. 19(b)].

J.A. at 46 (first citing *OAO Healthcare Solutions, Inc. v. Nat'l Alliance of Postal & Fed. Emps.,* 394 F. Supp. 2d 16, 19 (D.D.C. 2005); and then citing *Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Babbitt,* 43 F .3d 1491, 1494 (D.C. Cir. 1995)). The DC court further explained that under the first variable,

> [A] party is to be joined if feasible if (1) the court cannot accord complete relief among existing parties; (2) the party's absence may, as a practical matter, impair or impede that party's ability to protect its interest; or (3) the party's absence may subject the existing parties to substantial risk of incurring multiple or otherwise inconsistent obligations.

*Id.* at 46–47 (citing Fed. R. Civ. P. 19(a)(1)). The DC court also identified the following factors for consideration under the third variable:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment[,] (B) shaping the relief[,] or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* at 50 (quoting Fed. R. Civ. P. 19(b)). Considering all of these factors, the DC court made several findings that led it to conclude that Mr. Ali's case could not proceed without UMass as a party.

First, the DC court found that UMass was a required party under Rule 19(a). More specifically, Mr. Ali's inventorship claim jeopardized UMass's "ownership interest" in the patents-in-suit and that interest "could be impaired or impeded in its absence" from the case. *Id.* at 47. And although Mr. Ali could receive complete relief on his inventorship claim as the DC court could order the U.S. Patent and Trademark Office to correct the inventive entity of the patents-in-suit without UMass's presence, complete relief could not be received on his damages claims.[3] *See id.* at 47–48. The DC court also noted that our court has remarked in the past "that patent owners are required to be joined if feasible under Rule 19(a)." *Id.* at 47 (quoting *Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1326 (Fed. Cir. 2013)). Therefore, it concluded that

---

[3] In addition to being unable to afford complete relief on these damages claims in UMass's absence, the DC court elaborated on how UMass would be prejudiced by its absence in its Rule 19(b) analysis. *See* J.A. at 48 (citing *Kickapoo,* 43 F .3d at 1497 n.9).

"UMass [was] a necessary party because it is a co-owner of the [patents-in-suit], and its interests would be highly prejudiced in its absence, even if the [c]ourt could afford partial relief to [Mr. Ali] as to inventorship." *Id.* at 48–49.

Second, the DC court found that UMass could not be joined to the case, adopting the Oregon court's conclusion that UMass had sovereign immunity. *Id.* at 49.

Third, the DC court found that equity and good conscience did not permit it to proceed with the case under Rule 19(b). As a preliminary matter, it explained that the Rule 19(b) inquiry "calls for a pragmatic decision based on practice considerations in the context of particular litigation" and so it had "*substantial discretion* in considering which factors to weigh and how heavily to emphasize certain considerations . . . ." *Id.* at 50 (emphasis added) (quoting *Kickapoo*, 43 F.3d at 1495). Moreover, the DC court observed that, in the D.C. Circuit, "sovereign immunity reigns supreme" when analyzing the Rule 19(b) factors. *Id.* at 50–51 (citation omitted).

For the first factor, the DC court found that, for the inventorship claim, UMass would be prejudiced in its absence from the case because it is a "co-owner[] of the patents[-in-suit], and the addition of [Mr. Ali] would change [its] ownership rights." *Id.*; *see also id.* ("[Although] Carnegie's interest in protecting the inventorship status of the patents[-in-suit] aligns with UMass's, UMass's relationship with [Mr. Ali] is much more central to the case than is Carnegie's."). It also found that "Carnegie may even be incentivized to settle the case early as to the . . . inventorship claim to eliminate *its own* potential liability which would highly prejudice the absent UMass's ownership interest in the patents." *Id.* at 53 (emphasis in original). As for the damages claims, because Mr. Ali directed those only at UMass, "it would be highly prejudicial to Carnegie to force it to vigorously defend a suit . . . in a case that involves only potential

financial loss to UMass—a party that cannot be joined." *Id.* at 52–53. So this factor favored dismissal of the case.

Next, the DC court determined that the prejudice to UMass could not be mitigated by any alternative relief to dismissal for either the inventorship claim, *see id.* at 57 & n.9, or the damages claims, *see id.* at 56–57. Thus, this factor also favored dismissal of the case.

The DC court then determined that as to whether a judgment rendered in UMass's absence would provide adequate relief to Mr. Ali, this factor favored proceeding with the case in part and dismissal of the case in part. *See id.* at 58–59. While the DC court could afford complete relief to Mr. Ali for his inventorship claim if his case proceeded, the same could not be said for his damages claims. *See id.* On balance, the DC court concluded that the Rule 19(b) factors weighed against proceeding in the case without UMass. *Id.* at 61.

The DC court then dismissed Mr. Ali's first amended complaint, but granted him leave to file a second amended complaint to the extent that he wished to pursue *only* the inventorship claim against the UMass officials responsible for incorrectly identifying the inventive entity of the patents-in-suit. *Id.* at 57 & nn. 9–10, 63. Mr. Ali did not seek leave to file such an amended complaint.

As Mr. Ali did before the Oregon court, he sought reconsideration of the DC court's decision with respect to its financial prejudice analysis for Rule 19(b). First, he contended that the DC court erred in finding that UMass would be prejudiced financially if he were to litigate his case successfully because the amount that UMass pays to its inventors is fixed and would not change. Alternatively, he contended that if he were successful, the DC court could order the other co-inventors to pay monetary damages on behalf of UMass. The DC court rejected the former contention because regardless of how UMass currently pays the other co-inventors of the patents-in-

suit, UMass would ultimately have to pay Mr. Ali if he were successful in the case. It rejected the latter contention, observing that Mr. Ali had not previously raised it before the court and explaining that, in any event, the court had no power to issue judgments against nonparties to cases. The DC court also noted that financial prejudice to UMass was only one factor, "and a secondary one at that," in its 19(b) analysis, so its ultimate conclusion that neither his inventorship claim nor his damages claims could proceed without UMass would remain undisturbed by Mr. Ali's contentions.[4] *See, e.g., id.* at 78 ("UMass faced not only financial prejudice if Mr. Ali prevailed on his . . . damages claims, but also potential impairment of its ownership interests in the [patents-insuit] if he prevailed solely on his . . . inventorship claim." (emphasis added) (citing prior opinion)); *id.* at 79 ("[T]he [c]ourt repeatedly emphasized that when determining whether the action should proceed without UMass, 'sovereign immunity reigns supreme in the analysis.'" (citation omitted) (quoting prior opinion)); *id.* ("[I]t was not only the financial prejudice to an absent sovereign that governed the [c]ourt's Rule 19 analysis, but also the likely prejudice to UMass's patent-ownership interests and to Carnegie if it was forced to defend the suit alone despite the fact that 'UMass's relationship with [Mr. Ali] [was] much more central to the case than Carnegie's.'" (quoting prior opinion)).

Second, Mr. Ali included a one-sentence motion for leave to amend his first amended complaint such that it would reflect his initial complaint, which did not name UMass as a co-defendant. The DC court denied his re-

---

[4] Mr. Ali suggested, in a footnote in his motion, that he was unconstitutionally deprived of due process, but then informed the court it need not entertain that possibility. *See* J.A. at 82 n.5.

quest for leave because it did not comply with: (1) Fed. R. Civ. P. 15(a), which required Mr. Ali to explain how a second amended complaint would not have been futile; (2) Local Civ. R. 15.1, which required Mr. Ali to attach a copy of the proposed second amended complaint; and (3) the DC court's prior order, which granted leave to amend the first amended complaint solely to add the names of UMass officials responsible for correctly identifying the inventive entity of the patents-in-suit. *See* J.A. at 83–84. The proposed second amended complaint did not name UMass officials, as the DC court had earlier suggested.

The DC court's denial of Mr. Ali's request for leave caused him to file a second motion for reconsideration, where he accused the DC court of making several mistakes. The DC court dismissed any notion that its denial was erroneous.

Mr. Ali now appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012).

STANDARDS OF REVIEW

We apply our own law to the issue of sovereign immunity, as well as any waivers thereof, arising from patent cases. *See Univ. of Utah*, 734 F.3d at 1320 ("We have held that the question of Eleventh Amendment waiver is a matter of Federal Circuit law." (citing *Regents of the Univ. of N.M. v. Knight,* 321 F.3d 1111, 1124 (Fed. Cir. 2003))); *see also Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1343 (Fed. Cir. 2011) ("In addressing the issue of sovereign immunity, we apply our own law in light of the special importance of ensuring national uniformity on such questions." (first citing *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006); and then citing *Regents*, 321 F.3d at 1124)). A district court's decision on sovereign immunity is subject to de novo review. *See Univ. of Utah,* 734 F.3d at 1320.

On the other hand, we apply the law of the regional circuit to procedural questions that are not unique to patent cases, such as those pertaining to the propriety of discovery, the amendment of pleadings under Rule 15, and the joinder of parties under Rule 19, except to the extent that these questions implicate patent law issues. *E.g., A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1220 (Fed. Cir. 2010); *Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010); *Pressure Prod. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315 (Fed. Cir. 2010). In the Ninth Circuit, a denial of a discovery request is reviewed for an abuse of discretion. *E.g., Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Decisions bearing upon Rule 15 and Rule 19 are both reviewed for an abuse of discretion in the D.C. Circuit.[5] *E.g., Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (denial of leave to amend is reviewed for an abuse of discretion); *Kickapoo*, 43 F.3d at 1495 (decision that a party is indispensable under Rule 19(b) is reviewed for an abuse of discretion (citing *Cloverleaf Standardbred Owners Ass'n v. Nat'l Bank of Wash.*, 699 F.2d 1274, 1276 (D.C. Cir. 1983))).

## DISCUSSION

### A. The Oregon Court's Decisions

#### 1. Sovereign Immunity

Mr. Ali does not dispute the Oregon court's conclusion that UMass is entitled to sovereign immunity from his suit. Rather, he argues that the Oregon court erred in refusing to conclude that UMass waived sovereign immunity when, in return for federal funding under the Bayh-Dole Act, it allegedly signed a contract controlled by and consistent with the Bayh-Dole Act (Bayh-Dole con-

---

[5] Mr. Ali has challenged no decision of the Oregon court grounded in either of these rules.

tract) and expressly declared that it would be amenable to suit in federal court.[6]  *See* Appellant Br. at 17–19; *see also id.* at 17 (citing 35 U.S.C. § 202(c)(7)(B)).  We see no error in the Oregon court's conclusion.

UMass waives sovereign immunity under "only two circumstances: first, if the state on its own initiative invokes the jurisdiction of the federal courts; and second, upon a clear declaration by the state of its intent to submit to federal jurisdiction." *Xechem Int'l, Inc. v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1329 (Fed. Cir. 2004) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999)); *see also Biomedical Patent Mgmt. Corp. v. Cal., Dep't of Health Servs.*, 505 F.3d 1328, 1333 (Fed. Cir. 2007) (explaining same).

Here, UMass's alleged agreement to be subject to suit *by the federal government* under a contract controlled by and consistent with the Bayh-Dole Act cannot operate as a "clear declaration"[7] that it waived its sovereign immunity as to Mr. Ali's suit against it for damages arising from his alleged omission as a co-inventor of the patents-in-suit.  We agree with the Oregon court that "[t]here is

---

[6]   Mr. Ali has confusingly argued that his standing to bring suit against UMass compels a finding of UMass's waiver of sovereign immunity.  *See* Appellant Br. at 19–21.  Whatever force this argument may have is irrelevant because the argument has been waived.  *See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009) (explaining that arguments are waived if they were not raised or properly developed before the district court).  In any event, Mr. Ali cites no authority for such a proposition, and we are aware of none.

[7]   The first circumstance under which a waiver can occur is not at issue in this case.  J.A. at 22 n.2.

nothing in the Bayh-Dole Act that suggests waiver of sovereign immunity in federal court is a prerequisite to accepting funding under the [Bayh-Dole] Act, thereby permitting suit against a state in a § 256 action," which also seeks to collect monetary damages. J.A. at 25. And, following the Supreme Court, we have rejected "the argument that a state waives its immunity by entering into arrangements controlled by federal law and reviewable only in federal court." *Xechem*, 382 F.3d at 1329 (relying on *Coll. Sav. Bank*, 527 U.S. at 675). Therefore, the Oregon court correctly declined to find any waiver of UMass's sovereign immunity.

## 2. Discovery

Mr. Ali faults the Oregon court for denying him discovery of: (1) the alleged Bayh-Dole contract between UMass and the federal government, Appellant Br. at 16–18; and (2) the names of UMass officials that were responsible for correctly identifying the inventive entity of the patents-in-suit,[8] *id.* at 21–22. We detect no reversible error in the Oregon court's denial of discovery.

First, as mentioned above, any alleged contractual agreement between UMass and the federal government that could provide the federal government with a right to sue UMass does not amount to a waiver of sovereign immunity permitting others to sue UMass. *See, e.g., West Virginia v. United States*, 479 U.S. 305, 311 (1987) ("States have no sovereign immunity as against the [f]ederal [g]overnment . . . ." (citing *United States v.*

---

[8]    We have previously permitted suits against state officials to ensure the enforcement of federal law that seek prospective injunctive relief. *See Pennington Seed*, 457 F.3d at 1341–42 (explaining doctrine developed in *Ex parte Young*, 209 U.S. 123 (1908)). Such suits do not run afoul of the Eleventh Amendment. *Id.* at 1341.

*Texas*, 143 U.S. 621, 646 (1892))); *see also A123 Sys*, 626 F.3d at 1219 ("a state university's participation in one lawsuit does not amount to a waiver of immunity in a separate lawsuit" (citing *Biomedical Patent*, 505 F.3d at 1339)).

Second, as the Oregon court correctly observed, Mr. Ali already possessed the titles of those UMass officials responsible for identifying the correct inventive entity of the patents-in-suit. *See* J.A. at 10 n.3. Any additional discovery was unwarranted. We, therefore, see no abuse of discretion with the Oregon court's handling of Mr. Ali's discovery requests. *See, e.g.*, *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014) (no abuse of discretion where discovery into sovereign immunity question was based on "speculative arguments").

## B. The DC Court's Decisions

### 1. Joinder

Mr. Ali contends that the DC court erred in its Rule 19(b) analysis when the court determined that UMass would be financially prejudiced by Carnegie's defense of the case (as Carnegie would have less incentive to vigorously defend the suit). Mr. Ali argues that the DC court's analysis is inherently contradictory because the court, in his view, simultaneously reasons that Mr. Ali is and is not obligated to assign his purported rights in the patents-in-suit to the defendants. *See* Appellant Br. at 23–30. Mr. Ali misunderstands the DC court's financial prejudice analysis and fails to undermine the court's finding that UMass would be prejudiced, if it were absent from the case, because it would ultimately have to pay damages to Mr. Ali were he successful, whereas Carnegie would not. In other words, the DC court relied on Mr. Ali's allegations that he is entitled to monetary damages, *regardless* of whether Mr. Ali is obligated to assign any purported ownership interest in the patents-in-suit. *See* J.A. at 75 ("[T]he financial prejudice to UMass . . . stemmed from

[Mr. Ali's] claim[s] for damages, wherein he seeks not only to be included in future payouts but also to be compensated by UMass for several years of unpaid royalties."); *see also id.* at 49–61.

Mr. Ali also lodges a series of objections to the Rule 19(b) analysis that can be summed up as accusing the DC court of depriving him of constitutional due process. *See* Appellant Br. at 35–47. Mr. Ali objects to the DC court's dismissal because it deprives him of private property (patent rights) without due process in violation of the Fourteenth Amendment. *See id.* at 41–47. Mr. Ali further objects to the DC court's "sua sponte arguments" that were made on behalf of UMass and to which he had no notice and opportunity to respond. *See id.* at 35–41. We find these objections unfounded.

First, the DC court properly relied on Mr. Ali's representation that it need not consider any argument he may have concerning an unconstitutional deprivation of due process under the Fourteenth Amendment. *See* J.A. at 82 n.5.

Second, the DC court did not make any findings such that Mr. Ali was stripped of due process. Mr. Ali points out that the DC court found that he was seeking past monetary damages from UMass based on his alleged omission from the patents-in-suit. He now asserts that he never sought such damages, but this assertion is directly contradicted by his first amended complaint, which alleges that he is entitled to both retrospective and prospective monetary relief from UMass. *See id.* at 52–53, 328.

And his other due process complaints are merely disagreements with the DC court's findings, which do not render the court's analysis constitutionally unsound. For example, Mr. Ali asserts that the DC court wrongly found that UMass would be prejudiced as a result of its absence from the case. But again, this finding is predicated on Mr. Ali's allegations against UMass. *See id.* at 52–53

(citing paragraphs from Mr. Ali's first amended complaint that show that his relationship with UMass, as opposed to Carnegie, is "much more central to the case"); *see also id.* at 323–25, 328.

Significantly, while Mr. Ali challenges (without justification) various premises of the DC court's Rule 19(b) determination—that the action cannot proceed without UMass as a party—on appeal, he makes no challenge to the DC court's overall Rule 19(b) determination. We note, however, that in *University of Utah*, we concluded that a district court acted within its discretion in proceeding with a suit involving an inventorship claim against, among others, certain UMass officials, while UMass, a co-owner of the patents-in-suit, was absent from the suit. *See* 734 F.3d at 1325–28. The DC court correctly observed that, in so concluding, we found that UMass would not be prejudiced and its interests would be adequately protected "because UMass had entered into a[n] . . . agreement wherein it 'handed sole and exclusive control of th[e] suit' to one of the named defendants in the action." J.A. at 54 (quoting *Univ. of Utah*, 734 F.3d at 1327–28). No such agreement between UMass and Carnegie has been alleged. We have no occasion here to determine whether the DC court abused its discretion in this case by not allowing Mr. Ali's inventorship claim to go forward given Mr. Ali's limited challenge on appeal from the DC court and his failure to amend his complaint to name the UMass officials as parties.

### 2. Amending a Pleading

Mr. Ali protests the DC court's denial of his motion for leave to amend the first amended complaint to reflect his initial complaint. *See* Appellant Br. at 30–35. We see no abuse of discretion here because Mr. Ali did not—and still has not—explained how leave to amend under Rule 15(a) would not have been futile and would have cured the infirmities that plagued his first amended complaint. *See*

J.A. at 83–84; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  For example, he "has offered no argument whatsoever as to how reinstating the first complaint—which is premised on substantially the same factual allegations and once again would have Carnegie as the sole defendant opposing Mr. Ali's claims to correct inventorship and for related damages—would affect . . . [the] decision that UMass is a necessary party without which this case must not proceed."  J.A. at 84 (citation omitted).  And in any event, Mr. Ali failed to attach a copy of his proposed amended pleading in accordance with Local Rule 15.1.  Either of these deficiencies justifies the DC court's denial of leave to amend.

Finally, we have considered all of Mr. Ali's other alleged errors directed at either the Oregon court or the DC court and find them unpersuasive.

## CONCLUSION

For the foregoing reasons, the DC court's entry of judgment is *affirmed*.

## AFFIRMED

### COSTS

No Costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MUSSA ALI,**
*Plaintiff-Appellant*

**v.**

**CARNEGIE INSTITUTION OF WASHINGTON, UNIVERSITY OF MASSACHUSETTS,**
*Defendants-Appellees*

---

2016-2320

---

Appeal from the United States District Court for the District of Columbia in No. 1:13-cv-02030-RC, Judge Rudolph Contreras.

---

DYK, *Circuit Judge*, concurring.

Ordinary property disputes between individuals and state entities are resolved in state court. In these circumstances, the Eleventh Amendment, which bars suit only in federal courts, does not operate to leave the property owner without a remedy when a suit in federal court is dismissed. *See Alden v. Maine*, 527 U.S. 706, 755 (1999) ("Many States, on their own initiative, have enacted statutes consenting to a wide variety of suits.").

Patent inventorship claims are different. A state law remedy is not available, and a claimant's only remedy lies in a federal cause of action under 35 U.S.C. § 256 to correct inventorship. This is so because federal law ousts state courts of jurisdiction over inventorship claims. The statute provides that "[n]o State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a).[1] The statute instead prescribes exclusive jurisdiction in federal courts. *See id.* Under these circumstances, it seems to me particularly harsh to hold that the federal action—in which the relief sought is directed to the Director of the Patent Office—cannot proceed without the state entity as a party. I note that in *University of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1328 (Fed. Cir. 2013), we allowed the federal action to proceed without the state entity.

Thus, while I join the majority opinion, it remains for us to determine in another case how the Rule 19(b) factors should apply to a claim for inventorship, given the lack of any alternative remedy.[2] (These concerns may not, of

---

[1]    *See also Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1324–25 (Fed. Cir. 2009) ("There is no doubt that § 256 supplies such a valid basis for federal jurisdiction: an action to correct inventorship under § 256 'aris[es] under' the patent laws for the purpose of § 1338(a).")

[2]    "The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would

course, extend to a damages claim for misappropriation of patent rights, since a state court remedy may well be available).

have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b).