# United States Court of Appeals for the Federal Circuit

———————

**BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM, TISSUEGEN, INC.,**
*Plaintiffs-Appellants*

**v.**

**BOSTON SCIENTIFIC CORPORATION,**
*Defendant-Appellee*

———————

2018-1700

———————

Appeal from the United States District Court for the Western District of Texas in No. 1:17-cv-01103-LY, Judge Lee Yeakel.

———————

Decided: September 5, 2019

———————

MICHAEL W. SHORE, Shore Chan DePumpo LLP, Dallas, TX, argued for plaintiffs-appellants. Also represented by ALFONSO CHAN, CHIJIOKE E. OFFOR; ANDREW M. HOWARD, Howard & Spaniol, PLLC, Dallas, TX; RUSSELL J. DEPALMA, Russell J. DePalma PLLC, Irving, TX.

JOHN NILSSON, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for defendant-appellee. Also represented by MATTHEW WOLF, ANDREW TUTT.

———————

Before PROST, *Chief Judge,* REYNA and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

The Board of Regents of the University of Texas System (UT) and TissueGen Inc. sued Boston Scientific Corporation (BSC) for patent infringement in the Western District of Texas. The district court determined that venue was improper and transferred the case to the District of Delaware. UT, acting as an arm of the State of Texas, appeals the district court's transfer order on several grounds relating to its rights as a sovereign entity.

We hold that, as a threshold matter, we have jurisdiction to hear this appeal under the collateral order doctrine. On the merits, we conclude that the state sovereignty principles asserted by UT do not grant it the right to bring suit in an otherwise improper venue. We affirm.

## BACKGROUND

The Board of Regents is the governing body for the University of Texas System, which includes eight universities and six health institutions. The Board's nine regents are appointed by the Governor of Texas and confirmed by the Texas Senate, and its authority to govern the University of Texas System is delegated to it by the Texas Legislature. It is undisputed that UT is an arm of the State of Texas.

UT is the assignee and exclusive owner of patents resulting from research conducted at the University of Texas System. Its portfolio includes U.S. Patent Nos. 6,596,296 and 7,033,603 (the "patents-in-suit"), which are directed to implantable drug-releasing biodegradable fibers. Dr. Kevin Nelson, co-inventor of the patents-in-suit, developed the claimed technology at the University of Texas at Arlington and founded TissueGen Inc. as a vehicle for commercializing his inventions. UT exclusively licensed the patents-in-suit to TissueGen, which then commercialized its ELUTE® fiber product. According to UT, ELUTE® fiber

is intended to replace standard fibers in medical devices like implantable stents, and it is capable of delivering therapeutic agents directly to the site of implantation.

In November 2017, UT and TissueGen sued BSC for patent infringement in the Western District of Texas. *See* Compl., *Bd. of Regents, the Univ. of Tex. Sys. v. Boston Sci. Corp.*, No. 1:17-cv-1103 (W.D. Tex. Nov. 20, 2017), ECF No. 1. UT alleged that several BSC stent products infringed the patents-in-suit. In its complaint, UT conceded that BSC is a Delaware corporation with a principal place of business in Massachusetts. It asserted that "[v]enue is proper in the Western District of Texas because UT has sovereign immunity and this Court has personal jurisdiction over [BSC]." *Id.* ¶ 7. Relying on state sovereignty as its hook for venue, UT explained:

> Venue is proper in the Western District of Texas because UT is an arm of the State of Texas, has the same sovereign immunity as the State of Texas, it would offend the dignity of the State to require it to pursue persons who have harmed the State outside the territory of Texas, and the State of Texas cannot be compelled to respond to any counterclaims, whether compulsory or not, outside its territory due to the Eleventh Amendment.

*Id.* ¶ 10. UT further emphasized that it did not waive its sovereign immunity and did not "consent[] to any suit or proceeding filed separate from this action." *Id.* ¶ 2.

BSC filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue. It requested that the case be dismissed or, in the alternative, transferred to the District of Delaware. BSC noted that it does not own or lease any property or maintain a business address in the Western District of Texas. BSC disclosed that it has approximately forty-six employees in the Western District of Texas, all of whom maintain home offices and do

not work in spaces that are owned, leased, or controlled by BSC.

The district court granted BSC's motion and transferred the case to the District of Delaware. *See Bd. of Regents, the Univ. of Tex. Sys. v. Boston Sci. Corp.*, No. 1:17-cv-1103 (W.D. Tex. Mar. 12, 2018), ECF No. 27 ("*Order*"). It explained that "28 U.S.C. § 1400(b)[] is the 'sole and exclusive provision controlling venue in patent infringement actions,'" and that venue is proper under this section where a defendant resides or has a regular and established place of business. *Id.* at 2 (quoting *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017)). Applying this court's decision in *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017), the district court found that BSC "does not maintain a 'regular and established place of business' in the Western District of Texas." *Id.* It rejected UT's sovereign immunity arguments, explaining that "[s]overeign immunity is a shield; it is not meant to be used as a sword . . . There is no claim or counterclaim against The Board of Regents that places it in the position of a defendant." *Id.* at 3 (citing *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)). The district court held that venue was improper under § 1400(b), as there was no dispute that BSC, a Delaware corporation, does not reside in the district. Accordingly, it transferred the case to the District of Delaware pursuant to 28 U.S.C. § 1406. *Id.* at 3–4. UT appeals the district court's transfer order.

DISCUSSION

I

We first address whether we have appellate jurisdiction over UT's appeal. Transfer orders are interlocutory and generally cannot be appealed immediately. We conclude, however, that we have jurisdiction here. Because UT challenges the district court's transfer order based on state sovereignty, we hold that this case falls within the

small class of orders excepted from the final judgment rule by the collateral order doctrine.

Section 1295(a)(1) of Title 28 grants this court jurisdiction over any "appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents." Under the final judgment rule, a party may not appeal "until there has been a decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1308 (Fed. Cir. 2013) (en banc) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981)). "Appeal is thereby precluded 'from any decision which is tentative, informal or incomplete,' as well as from any 'fully consummated decisions, where they are but steps towards final judgment in which they will merge.'" *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142 (1993) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). A transfer order is not a final judgment. It "is interlocutory and thus not immediately appealable, but appealable only incident to a final judgment in a case (or a partial judgment pursuant to Fed. R. Civ. P. 54(b)) or as a certified question pursuant to 28 U.S.C. § 1292(b)." *FDIC v. Maco Bancorp, Inc.*, 125 F.3d 1446, 1447 (Fed. Cir. 1997).

The collateral order doctrine provides a "narrow exception" to the final judgment rule. *Amgen Inc. v. Hospira, Inc.*, 866 F.3d 1355, 1358–59 (Fed. Cir. 2017). An order that is not final will be immediately appealable under this doctrine if it "fall[s] in that small class which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Puerto Rico*, 506 U.S. at 143 (quoting *Cohen*, 337 U.S. at 546). "To come within the 'small class' of . . . [collateral order doctrine decisions], the order must

[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Id.* at 144–45 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)); *see also Cohen*, 337 U.S. at 546.

The Supreme Court has held that States and State entities may invoke the collateral order doctrine to immediately appeal an order denying a claim of sovereign immunity. In *Puerto Rico*, the Puerto Rico Aqueduct and Sewer Authority (PRASA)—an arm of the Puerto Rican government—sought to upgrade Puerto Rico's waste treatment plants and contracted with Metcalf & Eddy Inc. to assist with the task. 506 U.S. at 141. PRASA withheld payments on the contract due to alleged overcharging by Metcalf, and Metcalf sued PRASA in the District of Puerto Rico for breach of contract in response. *Id.* PRASA then moved to dismiss the case on grounds that sovereign immunity under the Eleventh Amendment prohibited the suit. *Id.* The district court denied the motion, PRASA appealed, and the First Circuit dismissed the appeal for lack of jurisdiction. *Id.* at 141–42. The First Circuit explained that its precedent barred States from taking an immediate appeal on a claim of sovereign immunity. *Id.* at 142.

The Supreme Court reversed. It determined that decisions denying claims of sovereign immunity by a State or its arms fall within the "small class" of decisions covered by the collateral order doctrine. *Id.* at 144–45. The Court explained that such decisions satisfy the three elements of the doctrine as set forth in *Cohen* and *Coopers & Lybrand*. *Id.* It emphasized that the Eleventh Amendment confers on States the privilege not to be sued, and that decisions denying sovereign immunity "purport to be conclusive determinations that [States] have no right not to be sued in federal court." *Id.* at 145. The Court noted that resolving the issue of sovereign immunity "generally will have no bearing on the merits of the underlying action," and that

the value of sovereign immunity to a State "is for the most part lost once litigation proceeds past motion practice." *Id.* Accordingly, the Court held that "States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity." *Id.* at 147; *see also Univ. of Minn. v. LSI Corp.*, 926 F.3d 1327, 1331 n.2 (Fed. Cir. 2019) ("It is well-established that decisions denying sovereign immunity are appealable as collateral orders, and the 'ultimate justification is the importance of ensuring that the States' dignitary interests can be fully vindicated.'" (quoting *Puerto Rico*, 506 U.S. at 146–47)).

Here, UT challenges the district court's transfer order on several grounds. It argues that the U.S. Constitution's Original Jurisdiction Clause ensures that a State cannot be forced to sue in a court located in another State. *See* Appellant's Br. 11–17. UT also argues that the Eleventh Amendment confirms that a State is entitled to control where it litigates against a private party. *See id.* at 18–21. Finally, it asserts that it did not consent to jurisdiction or waive its sovereignty rights in Delaware, and that the patent venue statute does not abrogate those rights. *See id.* at 26–36. UT generally invokes its rights as a state sovereign to challenge the district court's transfer order—an order denying the application of the Eleventh Amendment. *See Order* at 3. We thus hold that, based on the Supreme Court's reasoning and analysis in *Puerto Rico*, the collateral order doctrine likewise applies here.

As in *Puerto Rico*, the district court's order satisfies all three elements of the collateral order doctrine. *See* 506 U.S. at 144–45. The first element is met because the order "conclusively determine[d]" that State sovereignty principles do not apply. *Id.* at 144. There is nothing "tentative, informal or incomplete" about the transfer order regarding this issue. *Cohen*, 337 U.S. at 546. As soon as the case proceeds in Delaware, UT is subject to suit there, and

the issue of whether state sovereignty principles apply is conclusively determined in the negative. Contrary to BSC's argument, UT cannot simply "raise its sovereignty arguments in a 'different room,'" because UT's asserted right to not litigate in Delaware is immediately lost upon transfer. Appellee's Br. 9 (quoting *Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC*, 305 F.3d 253, 255 (4th Cir. 2002)).

During oral argument, BSC conceded that, had UT unsuccessfully moved in the District of Delaware to retransfer the case back to Texas, then the issue would be conclusively determined and the collateral order doctrine would apply. Oral Arg. at 23:08, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1700.mp3. That UT could have filed a motion to retransfer in Delaware does not alter our determination that the first element is satisfied. The Texas court already concluded that (1) venue is improper in the Western District of Texas; and (2) venue is proper in the District of Delaware. As the Supreme Court has explained, these conclusions are law of the case:

> Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts . . . Indeed, the policies supporting the doctrine apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation.

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Id.* at 817 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1984)). Thus, the District of

Delaware can revisit the Texas court's venue determination only under extraordinary circumstances, such as reaching a conclusion that the Texas court's decision was "clearly erroneous and would work a manifest injustice." *Id.* (quoting *Arizona*, 460 U.S. at 618 n.8). In the absence of such a conclusion, however, the law-of-the-case doctrine applies and the issue of whether UT is subject to jurisdiction in Delaware is conclusively determined. We note that, in opposing appealability, BSC does not waive the law-of-the-case protection it has against the Delaware court drawing a different conclusion than the one it urged the Texas court to make. BSC does not argue that the Texas court's decision is implausible or clearly erroneous. Nor could it. After all, BSC's position is that, far from being clearly erroneous, the Texas court's decision is actually correct. We agree that the Texas court's ruling is not clearly erroneous or implausible and, as such, we are satisfied that the Texas court's transfer decision is conclusive for purposes of the collateral order doctrine.

The second element is also met because the state sovereignty issues raised here are "important issue[s]," the resolution of which are "completely separate from the merits" of the patent infringement suit. *Puerto Rico*, 506 U.S. at 144. In *Puerto Rico,* the Supreme Court explained that Eleventh Amendment immunity is "a fundamental constitutional protection" and that "its ultimate justification is the importance of ensuring that the States' dignitary interests can be fully vindicated." *Id.* at 145–46. The Court noted that the purpose of the Eleventh Amendment is to "prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," and that the Amendment "is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Id.* at 146. The state sovereignty principles claimed here are similar to the claims of Eleventh Amendment immunity in *Puerto Rico* because, in both instances, the claim invokes

sovereignty to protect a State's dignitary interest in not litigating under conditions to which it did not agree. We thus determine that resolving whether those principles apply here is also an "important issue." *Id.* at 144. And because resolution of this issue is "completely separate from the merits of" a patent infringement suit, the second element of the collateral order doctrine is satisfied. *See id.* Our determination here turns on UT's assertion of state sovereignty, and we recognize that transfer orders normally would not satisfy this element. *See* Appellee's Br. 10–11.

Finally, the third element of the collateral order doctrine is satisfied because the district court's order, which determined that Eleventh Amendment principles do not apply, is "effectively unreviewable on appeal from a final judgment." *See Puerto Rico,* 506 U.S. at 144–45. On appeal, UT asserts its rights as a sovereign entity to choose its forum and not litigate its case in Delaware. If the case proceeds to final judgment, an appeal of UT's claims of state sovereignty would be effectively pointless as UT would have been litigating in Delaware the entire time. Like the scenario in *Puerto Rico*, the value of UT's asserted rights "is for the most part lost as litigation proceeds past motion practice." *Id.* at 145; *see also Firestone*, 449 U.S. at 376–77 (explaining that the challenged order must constitute a final rejection "of a claimed right where denial of immediate review would render impossible any review whatsoever" (quoting *United States v. Ryan*, 402 U.S. 530, 533 (1971))).

We acknowledge that *Puerto Rico* differs because there the State entity stood as a defendant whereas here, UT stands as a plaintiff. The Supreme Court's decision in *Puerto Rico* turned on its recognition that the Eleventh Amendment confers on a State or state entity the right to not *defend* a suit, and that this important right is lost if the State's claim to sovereign immunity is denied. *See* 506 U.S. at 144–45. Here, in contrast, UT relies not on sovereign immunity under the Eleventh Amendment so much

as on related principles that it labels as state sovereignty. We nonetheless conclude that *Puerto Rico*'s teachings apply here. As we explained above, UT's assertion of state sovereignty principles is similar to a claim of Eleventh Amendment immunity because both arguments invoke attributes of state sovereignty to preclude a suit from going forward. Even if we were to ultimately conclude that plaintiffs cannot assert state sovereignty to defeat a venue transfer, that determination goes to the merits of the state sovereignty issue in this case and cannot be the basis for denying jurisdiction.

Given the similarities between this case and *Puerto Rico*, we conclude that we have jurisdiction because the district court's transfer order fits within the small class of judgments excepted from the final judgment rule by the collateral order doctrine.

## II

Turning to the merits, UT seeks reversal of the district court's transfer order on several grounds relating to state sovereignty. It argues that venue is proper in the Western District of Texas because a State, as a sovereign entity, has the right to sue a nonresident in its forum of choice as long as personal jurisdiction is satisfied. According to UT, the federal patent venue statute cannot abrogate a State's right to choose the forum when asserting infringement of its federal patent rights. UT also argues that the District of Delaware lacks jurisdiction because UT never consented to suit in Delaware, never waived its sovereignty in Delaware, and never had its sovereignty abrogated by statute. We disagree with UT on all grounds. We hold that the state sovereignty principles asserted by UT do not grant it the right to bring a patent infringement suit in an improper venue. Accordingly, the district court did not err in transferring the case to the District of Delaware.

## A.  Standard of Review

The patent venue statute, 28 U.S.C. § 1400(b), "is the sole and exclusive provision controlling venue in patent infringement actions."  *TC Heartland*, 137 S.Ct. at 1519 (quoting *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)).  Venue is proper under § 1400(b) only where a defendant resides or "has a regular and established place of business."  28 U.S.C. § 1400(b).  "We review de novo the question of proper venue under 28 U.S.C. § 1400(b)." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1381 (Fed. Cir. 2019).

We apply Federal Circuit law to the questions of state sovereignty raised here, just as we have applied our own law to questions of sovereign immunity. *See Delano Farms Co. v. Cali. Table Grape Comm'n*, 655 F.3d 1337, 1343 (Fed. Cir. 2011) ("In addressing the issue of sovereign immunity, we apply our own law in light of the special importance of ensuring national uniformity on such questions."); *see also Univ. of Utah v. Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V.*, 734 F.3d 1315, 1320 (Fed. Cir. 2013) ("We have held that the question of Eleventh Amendment waiver is a matter of Federal Circuit law.").  We review these questions de novo. *See Univ. of Utah*, 734 F.3d at 1320 ("We review the district court's decision on Eleventh Amendment immunity de novo." (quoting *A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1219 (Fed. Cir. 2010))).

## B.  Venue in the Western District of Texas

The district court determined that BSC neither resides in nor has a regular and established place of business in the Western District of Texas under § 1400(b). *Order* at 2–3.  UT does not appeal these determinations.  It challenges the transfer order only on the basis of state sovereignty.  There is no dispute that UT is an arm of the State of Texas and is entitled to the same sovereign rights as Texas. *See Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex.*

*Sys.*, 458 F.3d 1335, 1340 (Fed. Cir. 2006) ("The University of Texas System is deemed to be an arm of the State of Texas, *see* Tex. Gov't Code § 441.101(3), . . . .").

UT argues that a State has the right to sue a private party in any forum as long as personal jurisdiction requirements are met. *See* Appellant's Br. 11–20. UT asserts that this right "is an essential privilege of state sovereignty," and is established by several authorities including "the language and history of the Original Jurisdiction Clause and Eleventh Amendment," and Supreme Court precedents. *Id.* at 19. We disagree with UT. First of all, State sovereign immunity does not apply where a State acts solely as a plaintiff, as UT does here. We also discern nothing in the U.S. Constitution's Original Jurisdiction Clause or in UT's other asserted authorities that supports the proposition that a State has the right to bypass federal venue rules when it engages in patent litigation as a plaintiff. We thus conclude that UT does not have the right to bring a patent infringement suit against BSC in the Western District of Texas, an improper venue. We address UT's sovereign immunity, original jurisdiction, and state sovereignty arguments in detail below.

### 1. State Sovereign Immunity

We first address the doctrine of state sovereign immunity, "sometimes referred to" as "Eleventh Amendment immunity." *See Alden v. Maine*, 527 U.S. 706, 713 (1999). The Eleventh Amendment immunizes the States from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In its opening appellate brief, UT asserted that the Eleventh Amendment allows a State "to control where it litigates against a private party." Appellant's Br. 18 (capitalization altered). According to UT, state sovereign immunity provides that "only the state can dictate where it litigates its

property rights; a private party cannot dictate the forum."[1] *Id.*

We have previously held, however, that "the Eleventh Amendment applies to suits 'against' a state, not suits by a state." *Eli Lilly*, 119 F.3d at 1564. In *Eli Lilly*, the Regents of the University of California (UC)—an arm of the State of California—sued Eli Lilly & Co. for patent infringement in the Northern District of California. *Id.* at 1562. The Judicial Panel on Multidistrict Litigation consolidated the case with five other related cases for pre-trial proceedings in the Southern District of Indiana. *Id.* at 1563. UC then filed a petition for a writ of mandamus to this court, seeking to vacate the transfer order as barred by the Eleventh Amendment. *Id.* We denied UC's petition, holding that "the transfer did not force unconsented suit upon UC and thus was permissible for purposes of pretrial discovery." *Id.* Lilly subsequently filed a motion to have the case transferred under 28 U.S.C. § 1404(a) to the Southern District of Indiana for trial. *Id.* The District Court for the Southern District of Indiana granted the motion, transferred the case to itself, and a trial proceeded on the merits. *Id.* The district court ruled in favor of Lilly on infringement and validity, and UC appealed to this court. *Id.* at 1564.

UC argued on appeal that Eleventh Amendment immunity deprived the Southern District of Indiana of jurisdiction. Specifically, UC asserted that by choosing to bring

---

[1] While UT expressly relied on sovereign immunity in district court and in its opening appellate brief, it appears to have shifted course during the appeal. Indeed, in its reply, UT asserted that "this case is not about Eleventh Amendment immunity." Reply Br. 5 (capitalization altered). Likewise, during oral argument, UT's counsel stated that "[t]his is not an Eleventh Amendment case." Oral Arg. at 6:57. We nonetheless address this argument since it was presented to the district court and raised here.

suit in the Northern District of California, it waived its Eleventh Amendment immunity only in California federal courts. *Id.* We explained that Eleventh Amendment immunity applies only in situations where a State is a defendant. *See id.* at 1564–65. We determined that UC's reliance on *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (1990), was misplaced because the Court in that case "did not construe the Eleventh Amendment to apply to suits in which a state is solely a plaintiff," and noted that "we do not believe that the Court has ever so construed the Eleventh Amendment." *Eli Lilly*, 119 F.3d at 1564. Because UC was acting solely as the plaintiff, we explained that "we need not determine whether UC waived its immunity only in California, because this case does not create an Eleventh Amendment jurisdictional issue concerning which the question of waiver even arises." *Id.* at 1564–65. Recognizing that there were no claims or counterclaims that placed UC in the position of a defendant, we concluded that "the Eleventh Amendment does not deprive the Indiana district court of jurisdiction in this case." *Id.* at 1565.

Our interpretation of the Eleventh Amendment in *Eli Lilly* was guided by the Supreme Court's reasoning in *United States v. Peters*, 9 U.S. (5 Cranch) 115 (1809) (Marshall, C.J.), a case where the Court declined to apply the Eleventh Amendment in a suit instituted against the heirs of a deceased State treasurer. *See Eli Lilly*, 119 F.3d at 1564. The Court in *Peters* instructed:

> The right of a state to assert, *as plaintiff*, any interest it may have in a subject, which forms the matter of controversy between individuals, in one of the courts of the United States, *is not affected by [the Eleventh] amendment*; nor can it be so construed as to oust the court of its jurisdiction, should such claim be suggested. The amendment simply provides, that no suit shall be commenced or prosecuted against a state. The state cannot be made a defendant to a suit brought by an individual; but it

> remains the duty of the courts of the United States to decide all cases brought before them by citizens of one state against citizens of a different state, where a state is not necessarily a defendant.

*Peters*, 9 U.S. at 139 (emphases added). This is consistent with other guidance from the Supreme Court. "[W]here a state voluntarily become[s] a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment." *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906). Moreover,

> [i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002).

Our decision in *Eli Lilly* controls here. Similar to UC in *Eli Lilly*, UT here invokes sovereign immunity to challenge the transfer to the District of Delaware. *See* Appellant's Br. 18–20. Because UT is acting solely as a plaintiff, however, sovereign immunity does not apply, and UT cannot rely on it to challenge the transfer. *See Eli Lilly*, 119 F.3d at 1564–65. We thus hold that sovereign immunity cannot be asserted to challenge a venue transfer in a patent infringement case where a State acts solely as a plaintiff.

UT nonetheless argues that "State sovereign immunity—a complementary attribute of state sovereignty—confirms that only the state can dictate where it litigates its property rights." Appellant's Br. 18. For support, it quotes

*Ex parte Ayers*, 123 U.S. 443, 505 (1887), for the proposition that "[t]he very object and purpose of the eleventh amendment [serves] to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties." Appellant's Br. 18–19. UT also quotes *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984), for the proposition that a "State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." Appellant's Br. 19. Finally, UT relies on *Feeney*, where the Supreme Court "reiterated that a state may control the venue in which it litigates, holding that 'issues of venue are closely related to those concerning sovereign immunity.'" Appellant's Br. 19 (quoting *Feeney*, 495 U.S. at 307). While UT accurately quotes these cases, we disagree with UT's reliance on them. *Ayers*, *Pennhurst*, and *Feeney* are all distinguishable as none involved the assertion of sovereign immunity by a State *as a plaintiff*. We are aware of no cases in which the Supreme Court has applied the Eleventh Amendment to suits in which a State is solely a plaintiff. Our reading of *Ayers*, *Pennhurst*, and *Feeney* here is consistent with *Eli Lilly*, where we previously distinguished *Feeney,* emphasizing that "the Court did not construe the Eleventh Amendment to apply to suits in which a state is solely a plaintiff." *Eli Lilly*, 119 F.3d at 1564.

### 2. The Original Jurisdiction Clause

UT next argues that "the Original Jurisdiction Clause ensures a State cannot be forced to sue in a court located in another State."[2]  Appellant's Br. 11 (capitalization

---

[2]  We note that UT did not present its original jurisdiction argument to the district court. We exercise our discretion and reach UT's argument rather than finding that UT waived this issue by failing to present it below. *See e.g.*, *In re DBC*, 545 F.3d 1373, 1378–79 (Fed. Cir. 2008) (noting

altered).  The U.S. Constitution grants the Supreme Court original jurisdiction over cases "in which a State shall be a Party."  U.S. CONST. art. III, § 2, cl. 2.  This grant is codified at 28 U.S.C. § 1251(b)(3), which provides: "The Supreme Court shall have original but not exclusive jurisdiction of . . . All actions or proceedings by a State against the citizens of another State or against aliens."  UT argues that certain Supreme Court decisions on original jurisdiction—namely *Ames v. Kansas*, 111 U.S. 449 (1884), *Georgia v. Pennsylvania Railroad Co.*, 324 U.S. 439 (1945), and *Ohio v. Wyandotte Chemicals Corp.*, 401 U.S. 493 (1971)—establish that a State has the "right to control the forum with requisite jurisdiction in which it sues a citizen of another state."  Appellant's Br. 12–17.  In so arguing, UT asserts not only that (a) it has a Constitution-rooted right to avoid out-of-state venues, but also that (b) it has an affirmative right to sue in a federal district court that Congress has deemed unavailable.  We disagree with UT's generous reading of these cases and address each case in turn below.

UT cites *Ames* for its statements that States "were left free to seek redress for their own grievances in any court that had requisite jurisdiction" and "no limits were set on their powers of choice in this particular."  *See id.* at 13 (emphasis omitted) (citing *Ames*, 111 U.S. at 465).  But these statements must be read in context.  In *Ames*, the State of Kansas filed suit in its own courts to challenge a corporate consolidation by a national railway company.  *See Ames*, 111 U.S. at 452–53.  The defendants removed to federal court on grounds that the case presented a federal question, and Kansas challenged the removal.  *Id.* at 465.  Kansas argued that the federal district court lacked jurisdiction due to the Original Jurisdiction Clause, which gives the Supreme Court "original Jurisdiction" in "all

---

"discretion to reach issues raised for the first time on appeal").

Cases . . . in which a State shall be Party." U.S. CONST. art. III, § 2, cl. 2. The Supreme Court disagreed and held that where a State brings suit against private parties, the original jurisdiction of the Supreme Court is not exclusive, and those suits "may now be brought in or removed to" the lower federal courts. *Ames*, 111 U.S. at 470. *Ames* thus stands for the proposition that lower federal courts can exercise jurisdiction over suits filed by a State against a non-State.

In so holding, the Supreme Court explained that one of the practical effects of original jurisdiction was "to allow the state to sue for itself in any tribunal that could entertain its case." *Id.* at 465. The Court here refers to the ability of States to sue in lower courts *in addition to* the Supreme Court. These passages do not, as UT asserts, support the proposition that States may sue in any forum regardless of venue rules.

*Georgia* also does not support UT's argument. In *Georgia*, the State of Georgia filed a bill of complaint in the Supreme Court, alleging that several railway companies had committed antitrust violations. 324 U.S. at 443. The defendants argued that the Supreme Court should decline to exercise original jurisdiction over the case because the action could have "conveniently proceed[ed] in the district court of the proper venue." *Id.* at 465. The Court exercised original jurisdiction anyway, noting that "it is apparent [from the complaint] that Georgia could not find all of the defendants in one of the judicial districts of Georgia so as to maintain a suit of this character against all of them in a district court in Georgia." *Id.* at 466. While the Court did allow Georgia to proceed in its chosen forum—the Supreme Court—this case also does not support the proposition that a State has a right to proceed in *any* forum regardless of venue rules.

In *Wyandotte*, the State of Ohio attempted to invoke original jurisdiction in a suit against a Michigan chemical

company.  401 U.S. at 494.  The Supreme Court declined jurisdiction, noting that the issues raised were "bottomed on local law," that multiple regulatory bodies were already involved, and that the case presented technical and factual questions in which the Court had no expertise.  *Id.* at 497, 502, 505.  UT argues that *Wyandotte* supports a State's right to litigate in its forum of choice regardless of federal venue rules because the Court broadly stated that "no State should be compelled to resort to the tribunals of other States for redress."  Appellant's Br. 17 (quoting *Wyandotte,* 401 U.S. at 500).  But, again, the Court's statement must be read in the context of the dispute litigated.  In *Wyandotte*, the Court was merely discussing the principles underlying original jurisdiction and did not even consider whether original jurisdiction confers on States the right to bring suit in an improper venue.  *See* 401 U.S. at 500.

The original jurisdiction cases cited by UT do not support the proposition that a State can bring suit in any forum as long as personal jurisdiction requirements are met. These cases are further inapposite because UT never even sought to invoke original jurisdiction.  It brought this suit "pursuant to 28 U.S.C. §§ 1331 and 1338(a)."  Compl. ¶ 5. Whether UT could have instituted this suit as an original proceeding in the Supreme Court is irrelevant because UT brought suit in a federal district court under federal question jurisdiction.

### 3. State Sovereignty

Finally, UT asserts that it has the right to sue for patent infringement in its forum of choice based on the inherent powers of a state sovereign.  For example, it argues that each State has "residual and inviolable sovereignty," and retained the right "as a sovereign, to choose the forum with requisite jurisdiction in which to enforce its property rights against citizens of another state."  Appellant's Br. 10–11. It further asserts that

> States, although a union, maintain attributes of sovereignty, including the (1) right to consent to or reject jurisdiction (the right to choose where it litigates its rights against a citizen); (2) immunity, *e.g.*, under the Eleventh Amendment or state tort claim acts;[] (3) eminent domain power; (4) power to try causes in its own courts; (5) power to tax; and (6) police power, among other attributes of sovereignty.

Reply Br. 5.

We acknowledge that States are sovereign entities that entered the Union with particular sovereign rights intact. *See* Appellant's Br. 9–11; *see also* Reply Br. 5–6. We are not convinced, however, that the inherent powers of Texas as a sovereign allow UT to disregard the rules governing venue in patent infringement suits once it chose to file such a suit in federal court.

When a State voluntarily appears in federal court, as UT has done here, it "voluntarily invoke[s] the federal court's jurisdiction." *Lapides*, 535 U.S. at 620. It logically follows that the State must then abide by federal rules and procedures—including venue rules—like any other plaintiff. We see nothing in UT's cited authorities that suggests otherwise. Indeed, it would be "anomalous or inconsistent" for UT to both invoke federal question jurisdiction and then to assert sovereignty to defeat federal jurisdiction. *See id.* at 619.

Our conclusion here is consistent with sovereign immunity decisions in the removal context from the Supreme Court and from our sister circuits. *See, e.g., id.* at 620 (noting that the State of Georgia "voluntarily invoked the federal court's jurisdiction" by voluntarily agreeing to remove the case to federal court); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) ("The removal of the cases here was the result of the voluntary acts of California and New Hampshire in

commencing the lawsuits against the defendants. Once having done so, these states subjected themselves to all of the rules and consequences attendant to that decision."); *In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140, 1148 (4th Cir. 1997) ("When a state authorizes its officials voluntarily to invoke federal process in a federal forum, the state thereby consents to the federal forum's rules of procedure and may not invoke sovereign immunity to protect itself against the interposition of defenses to its action.").

When a State sues in federal court, it waives sovereign immunity with respect to its asserted claims, subjecting itself to the jurisdiction of the federal courts, and must accept the federal statutory provisions that govern the allocation of cases among the courts. The Supreme Court has explained that Congress's power to establish lower federal courts under Article III is not restricted. "The discretion, therefore, of Congress as to the number, the character, the territorial limits of the courts among which it shall distribute this judicial power, is unrestricted except as to the Supreme Court." *United States v. Union Pac. R.R. Co.*, 98 U.S. 569, 602 (1878).

Congress thus has the power to establish as many—or as few—federal district courts as it wishes, and to authorize nationwide assertion of jurisdiction by those courts. *See, e.g.*, *Robertson v. R.R. Labor Bd.*, 268 U.S. 619, 622 (1925) ("Congress clearly has the power to authorize a suit under a federal law to be brought in any inferior federal court. Congress has power, likewise, to provide that the process of every District Court shall run into every part of the United States."); *Union Pac.*, 98 U.S. at 604 ("There is, therefore, nothing in the Constitution which forbids Congress to enact that, as to a class of cases or a case of special character, a circuit court—any circuit court—in which the suit may be brought, shall, by process served anywhere in the United States, have the power to bring before it all the parties necessary to its decision."); Henry M. Hart, Jr., *The*

*Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1365 (1953) ("Q. [] [D]oes the Constitution give people any right to proceed or be proceeded against in one inferior federal constitutional court rather than another? A. As to civil plaintiffs, no. Congress has plenary power to distribute jurisdiction among such inferior federal constitutional courts as it chooses to establish.").[3] It follows that Congress has the power to allocate cases, including patent cases, among the federal district courts and UT, having waived its sovereign immunity, cannot escape Congress's statutory provisions governing patent cases.

### C. Jurisdiction in the District of Delaware

Finally, UT argues that the District of Delaware lacks jurisdiction over this case because it did not consent to suit in Delaware, did not waive its sovereignty in Delaware,

---

[3]  *See also Toland v. Sprague*, 37 U.S. 300, 328 (1838) ("Congress might have authorized civil process from any circuit court, to have run into any state of the Union."); *Martin v. Hunter's Lessee*, 14 U.S. 304, 331 (1816) ("[Congress] might establish one or more inferior courts; they might parcel out the jurisdiction among such courts, from time to time, at their own pleasure."); Robert Haskell Abrams, *Power, Convenience, and the Elimination of Personal Jurisdiction in the Federal Courts*, 58 Ind. L.J. 1, 1 (1983) ("Had Congress in the exercise of its article III powers to establish 'inferior courts'[] chosen to establish only one such tribunal, there would be little doubt of the constitutional permissibility of such a choice."); Jonathan Remy Nash, *National Personal Jurisdiction*, 68 Emory L.J. 509, 524 (2019) (commenting that, if the Supreme Court's explanation in *Union Pacific* is true, "then Congress could establish federal trial courts whose jurisdictional reach extends across state lines; indeed, it could even set up a single federal trial court with national jurisdiction.").

and never had its sovereignty abrogated by statute. *See* Appellant's Br. 26–32. Citing *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999), UT asserts that waiver of sovereignty must be unequivocal and voluntary. *See* Appellant's Br. 26–29. In that case, College Savings Bank sued the State of Florida under the Lanham Act, alleging that Florida misrepresented its tuition prepayment program. *See College Savings*, 527 U.S. at 671. College Savings Bank argued that Florida waived its sovereign immunity by engaging in interstate marketing of its program. *See id.* The Supreme Court disagreed and held that Florida's sovereign immunity was not "voluntarily waived by the State's activities in interstate commerce." *Id.* at 691.

UT's reliance on *College Savings* is misplaced. As we explained above, sovereign immunity does not apply when a State proceeds as a plaintiff. Moreover, none of the authorities cited by UT support a broader privilege of state sovereignty that gives a State the right to bring suit in an improper venue. The issues of waiver and abrogation of such rights thus do not arise, because there is no sovereign immunity or relevant state sovereign right to waive or abrogate. *See Eli Lilly*, 119 F.3d at 1564–65.

UT also argues that waiver of its sovereign immunity is "forum and claim specific," and that it did not waive sovereignty in Delaware by filing suit in Texas. Appellant's Br. 29–30 (capitalization altered). We rejected the same argument in *Eli Lilly*, because sovereign immunity does not apply to "suits by a state." 119 F.3d at 1564. The cases UT cites as support are inapposite. UT cites to *Tegic* and *Hydro-Quebec*, to argue that "waiver of state sovereignty is limited to the state's chosen forum." Appellant's Br. 29. In both *Tegic* and *Hydro-Quebec*, we held that a state plaintiff that files a patent infringement suit in one case, does not waive its sovereign immunity in an *entirely different case. See Tegic*, 458 F.3d at 1343 ("Although here the University obviously 'made itself a party to the litigation to the full

extent required for its complete determination, . . . it did not thereby voluntarily submit itself to a new action brought by a different party in a different state and a different district court." (quoting *Clark v. Barnard*, 108 U.S. 436, 448 (1883))); *see also Hydro-Quebec*, 626 F.3d at 1220 ("UT's waiver of Eleventh Amendment immunity in a patent infringement suit in the Northern District of Texas did not result in a waiver of immunity in this separate infringement action."). There is no second infringement suit here, so these cases do not apply.

Additionally, UT states that "to rule against the State of Texas, you would have to find that a venue provision is [a] substantive jurisdictional right to defendants to only be sued where they reside as opposed to where there is jurisdiction over them." Oral Arg. at 36:52. UT argues that this would be contrary to *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706 (1972). Oral Arg. at 37:10. In *Brunette*, Kockum Industries, Inc. sued Brunette Machine Works—a Canadian corporation—for patent infringement in the District of Oregon, which dismissed the suit for improper venue under § 1400(b). *Id.* at 707. The Supreme Court ruled that, even though venue was improper under § 1400(b), that provision does not apply to suits against an alien defendant given the existence of 28 U.S.C. § 1391(d), a venue statute applicable to foreign entities. *Id.* at 713–14. The Court explained that "venue provisions are designed, not to keep suits out of the federal courts, but merely to allocate suits to the most appropriate or convenient federal forum." *Id.* at 710. The Court held that § 1391(d) controlled and that Brunette, an alien defendant, "cannot rely on § 1400" as a shield against suit in Oregon. *Id.* at 714. We do not find UT's reliance on *Brunette* persuasive because, unlike in *Brunette*, there is no authority asserted here that overrides the patent venue statute.

Because sovereign immunity does not apply to a State acting solely as a plaintiff, the issues of waiver and

abrogation do not arise here. Accordingly, jurisdiction in the District of Delaware is proper.

CONCLUSION

We have considered UT's remaining arguments and find them unpersuasive. UT's sovereign rights do not allow it to escape application of the patent venue statute in this case. We affirm the district court's transfer order.

**AFFIRMED**